Filed 7/5/16  Tyson v. Western Residential CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

|  |  |
|---|---|
| MAUREEN AMBER TYSON, | B263967 |
| Plaintiff and Respondent, |  |
| v. | (Los Angeles County Super. Ct. No. BC498660) |
| WESTERN RESIDENTIAL, INC., |  |
| Defendant and Appellant. |  |

APPEAL from an order of the Superior Court of Los Angeles County.  Mark Mooney, Judge.  Affirmed.

Haight Brown & Bonesteel, Bruce Cleeland and Vangi M. Johnson for Defendant and Appellant.

Law Office of Ray Newman and Ray Newman; Susan M. Mogilka for Plaintiff and Respondent.

_____

After her apartment was burglarized, plaintiff Maureen Tyson brought suit against, among others: (1) Western Residential, Inc., the company responsible for managing the building (management company); and (2) Ruben Cardona-Torres, the maintenance worker employed by management company, whom she believed to be the burglar. By special verdict, the jury concluded Cardona-Torres had not converted Tyson's property, but management company was liable in negligence for Tyson's losses. Management company sought judgment notwithstanding the verdict (JNOV) on the theory that it could not be held liable if its employee, Cardona-Torres, was not. The trial court denied the motion for JNOV, on the basis that evidence supported the jury's implied finding that some other management company employee had committed the burglary. Management company appeals, but challenges the denial of JNOV only as a matter of law; it did not designate the reporter's transcript of the trial as part of the appellate record and does not seek review of the trial court's conclusion that substantial evidence supported the jury's implied finding that the burglary was committed by one of management company's employees (albeit not Cardona-Torres). As the trial court did not commit legal error, and management company does not seek appellate review of the sufficiency of the evidence, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Because of the limited nature of the appellate record, our review of the facts is necessarily cursory. Tyson lived on the 21st floor of a high-rise apartment building managed by management company. The building had been advertised as a secure building with controlled access. In August 2012, Tyson's apartment was burglarized while she was away in Europe.

On September 9, 2013, Tyson brought suit against management company and Cardona-Torres. According to her complaint, Cardona-Torres had admitted to a parking valet at the building that he and a friend had committed the Tyson burglary. (The admission was allegedly made in the course of Cardona-Torres's attempt to solicit the valet to help him commit further break-ins by alerting him to times other tenants' cars were away.)

2

The complaint alleged Cardona-Torres had entered Tyson's apartment with a key he had obtained in one of two ways. First, as part of a prior service request, Cardona-Torres had made two extra copies of Tyson's key. Tyson speculated that Cardona-Torres may have made a third copy of the key and kept it for himself. Second, Tyson alleged management company's security regarding its copies of all tenants' keys was negligently lax, enabling anyone on the maintenance staff to obtain access to any unit at any time.

Tyson further alleged that management company was negligent in its handling of information that she was out of town. Tyson had e-mailed the building concierge this information, but was unaware that valets and maintenance staff also had access to the concierge's e-mail account, and therefore could have learned the otherwise private information that she was in Europe.

Tyson alleged a single cause of action for conversion against Cardona-Torres. As against management company, she alleged negligence in, among other things, management company's failure to take reasonable care to prevent the burglary.[1]

After a trial, the jury found, by special verdict, that management company was negligent, and its negligence was a substantial factor in causing harm to Tyson. Tyson was found to be comparatively negligent. Tyson's total damages, without reduction for her comparative fault, was $370,554. The jury then answered "no" to the question, "Did [Cardona-Torres] intentionally and substantially interfere with [Tyson's] property by taking possession of the jewelry, handbags, electronics, and clothing?"

In light of the verdict, management company moved for JNOV, on the theory that the special verdict was inconsistent. Management company argued that, since the jury concluded Cardona-Torres had not committed the burglary, the jury impliedly concluded that an unrelated third party committed the burglary, and landlords generally owe no duty to their tenants to safeguard their property from criminal activity of third parties, even if

---

[1]  Tyson also alleged fraud and negligent misrepresentation in connection with management company's representations regarding the safety features existing in the building. The jury found management company made a false representation of an important fact, but also that management company reasonably believed its representation to be true.

reasonably foreseeable.  (*Royal Neckwear Co. v. Century City, Inc.* (1988) 205 Cal.App.3d 1146, 1151 (*Royal Neckwear*).)

In opposition, plaintiff argued that there was evidence that the burglary was an inside job, "perpetrated by an employee who had access to the key to plaintiff's unit and to the parking structure of the building."

In reply, management company argued that because plaintiff had failed to *identify* the burglar, she had failed to *establish* that the burglar had been a management company employee.[2]  At argument on the motion, management company expounded this argument, arguing that in *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763 (*Saelzler*), the California Supreme Court held that a tenant cannot hold its landlord responsible for inadequate security when the tenant has not identified the criminals.  Tyson responded that she was not required to establish the specific identity of the burglar as long as she established that it was more likely than not that the burglar had been a management company employee.  The trial court agreed, identifying evidence of a "duplicate pass key, evidence about knowledge that Miss Tyson was going to be gone, evidence of prior burglaries."  Tyson identified additional evidence that the burglary was committed by a management company employee including "photographs . . . of two individuals carrying items from her apartment . . . and taking [them] through a garage entrance.  The only way you can get to that garage is to be at least a staff member . . . ."

The trial court denied the motion for JNOV.  Management company appealed only from the denial of its postjudgment motion for JNOV; it did not appeal the underlying judgment.

### DISCUSSION

"On appeal from the denial of a JNOV motion, an appellate court must review the record de novo and make an independent determination whether there is any substantial

---

[2]    The reply also stated, "The jury found that Mr. Torres was not responsible for the loss.  The jury further found no evidence regarding the supervision, or lack of supervision, of any other employee of the building defendants as being the cause of plaintiff's loss."  The special verdict form does not reflect that the jury was asked this second question, or made any such finding.

evidence to support the jury's findings.  [Citations.]  This review is limited to determining whether there is any substantial evidence to support the jury's verdict.  [Citation.]  The court must accept as true the evidence supporting the verdict, disregard conflicting evidence, and indulge every legitimate inference to support the verdict.  [Citation.]  If sufficient evidence supports the verdict, a reviewing court must uphold the court's denial of the JNOV motion.  [Citation.]  If the appellant raises purely legal questions, we conduct a de novo review.  [Citations.]" (*Hirst v. City of Oceanside* (2015) 236 Cal.App.4th 774, 782.)  Here, management company raises only legal issues; our review is therefore de novo.

*Royal Neckwear* establishes that a commercial landlord does not owe its tenants a duty to safeguard the tenants' property from reasonably foreseeable criminal activity by third parties.  (*Royal Neckwear, supra,* 205 Cal.App.3d at p. 1151.)  Management company argues that *Royal Neckwear* applies equally to residential landlords; we need not resolve the issue because even assuming *Royal Neckwear* applies, it does not help the management company.  *Royal Neckwear*, however, acknowledged that the situation it considered was distinguishable from cases addressing liability for thefts "when those thefts were committed by one of the landlord's agents."  (*Id*. at p. 1152, fn. 3; see *Maron v. Swig* (1952) 115 Cal.App.2d 87, 91 [reversing a nonsuit for the landlord when its agent had committed the thefts].)

Tyson argues that the criminal activity in this case was not committed by an unrelated third party, but by an unidentified management company employee.  If Tyson is correct, *Royal Neckwear* does not apply.  Management company takes the position that *Saelzler* prevents the "landlord's agents" exception from applying unless the tenant actually establishes the identity of the employee who was the thief – because causation cannot be established in the absence of identity.  As we shall explain, this is a mis-reading of *Saelzler*.

*Saelzler* involved a package delivery person who was physically assaulted by unknown assailants when attempting to deliver a package to a resident in a 29-building, multi-acre building complex.  She sued the building owners, arguing that their failure to

keep security gates closed and provide additional security guards was responsible for her assault. (*Saelzler, supra,* 25 Cal.4th at pp. 769, 771.) The building owners obtained summary judgment on the basis of causation, and the Supreme Court agreed. To prevail, a "plaintiff must establish, by nonspeculative evidence, some actual causal link between the plaintiff's injury and the defendant's failure to provide adequate security measures." (*Id*. at p. 774.) The plaintiff must have evidence that it was more probable than not that, but for the landlord's negligence, the assault would not have occurred. (*Id*. at p. 775.) The delivery person failed to meet this burden. As the court explained, "Plaintiff admits she cannot prove the identity or background of her assailants. They might have been unauthorized trespassers, but they also could have been tenants of defendants' apartment complex, who were authorized and empowered to enter the locked security gates and remain on the premises. The primary reason for having functioning security gates and guards stationed at every entrance would be to exclude *unauthorized* persons and trespassers from entering. But plaintiff has not shown that her assailants were indeed unauthorized to enter. Given the substantial number of incidents and disturbances involving defendants' own tenants, and defendants' manager's statement that a juvenile gang was 'headquartered' in one of the buildings, the assault on plaintiff could well have been made by tenants having authority to enter and remain on the premises. That being so, and despite the speculative opinion of plaintiff's expert, she cannot show that defendants' failure to provide increased daytime security at each entrance gate or functioning locked gates was a substantial factor in causing her injuries." (*Id*. at p. 776.)

The Court cautioned that it was not holding that the criminal must give testimony as to what would have prevented the crime in order for there to be liability. (*Saelzler, supra,* 25 Cal.4th at p. 779.) "[I]n a given case, direct or circumstantial evidence may show the assailant took advantage of the defendant's lapse (such as a failure to keep a security gate in repair) in the course of committing his attack, and that the omission was a substantial factor in causing the injury. Eyewitnesses, security cameras, even fingerprints or recent signs of break-in or unauthorized entry, may show what likely transpired at the scene." (*Ibid.*) In short, circumstantial evidence establishing the means of the criminal

6

activity may be sufficient evidence of causation, even in the absence of the identity of the criminal.

In the case before us, the trial court concluded there was such circumstantial evidence. Management company does not challenge this finding. It cannot do so; it did not provide a reporter's transcript to enable us to determine the sufficiency of the evidence. (*Telles v. Title Ins. & Trust Co.*(1969) 3 Cal.App.3d 179, 187-188.) In any event, from the limited record before us, it appears that there was substantial evidence the burglar accessed Tyson's apartment with a key, not by forced entry. Management company had such a key, which it did not keep secure. Nobody else with a key (such as Tyson's dog walker) could have been admitted without signing a logbook, and none of them signed it. The reasonable inference is that a management company employee committed the burglary. That the thieves left the building via a garage not accessible to outside third parties reinforces the conclusion.

To the extent management company argues that Cardona-Torres was the only one of its employees placed before the jury, we acknowledge that Cardona-Torres was the only one identified in the special verdict form, but disagree that he was the only one before the jury. Without the trial record, it is impossible to determine if the case was presented to the jury on the basis that it could find management company liable as long as one of its employees committed the burglary and its negligent practices enabled it to happen. We therefore assume that this theory was before the jury, and the jury adopted it.[3]

---

[3] At oral argument, management company argued that the theory that Cardona-Torres had committed the burglary was the only theory alleged in the complaint, and that the trial was therefore necessarily limited to that theory. We disagree. First, the pleadings may well have been amended to conform to proof at trial. (*Faigin v. Signature Group Holdings, Inc.* (2012) 211 Cal.App.4th 726, 736.) We do not know because there was no reporter's transcript. Second, the verdict form presented to the jury allowed a finding of management company negligence without Cardona-Torres's liability. There is nothing in the record indicating management company objected to the verdict form, leading to the inference the case was litigated, at least in part, on the theory that a management company employee other than Cardona-Torres was the burglar. Third, in

## DISPOSITION

The order denying JNOV is affirmed.  Tyson is to recover her costs on appeal.


RUBIN, J.

WE CONCUR:


BIGELOW, P. J.


FLIER, J.

---

denying the motion for JNOV, the trial court identified evidence admitted at trial which supports the conclusion that the burglary was an inside job, even if it was not committed by Cardona-Torres.