[Civ. No. 17891. Third Dist. Nov. 20, 1979.]

DWIGHT H. CARROLL et al.,
Cross-complainants and Respondents, v.
RAY L. GAVA et al., Cross-defendants and Appellants.

**COUNSEL**

Robert E. Hunter, Edward Houseman and David P. Uccelli for Cross-defendants and Appellants.

W. Jackson Willoughby, Garbolino & Pineschi and James Garbolino for Cross-complainants and Respondents.

OPINION

**PARAS, J.**—Ray L. Gava and Nancy Ann Gava appeal a judgment in favor of Dwight H. and Grace Carroll for damages based on negligent misrepresentation. For the reasons given below, we affirm.

The dispute concerned representations made about the zoning of a mobilehome park site in Placer County. The Gavas purchased the site from the original owners in early 1970 and sold it to the Carrolls in June of 1971. Land use in the area is controlled by a general plan for the Loomis Basin adopted in 1964; in 1971 the parcel was zoned "unclassified," a designation which permitted uses consistent with the general plan provided a conditional use permit was obtained. Although the use of the site as a multiple mobilhome site was not consistent with the general plan, the park antedated the plan and a conditional use permit for 36 specified mobilehome spaces on 6 of the 10 acres of the site had been issued to the original owner.

At trial, Dwight Carroll testified the Gavas told him the site was zoned for mobilehome use, and the possible location thereon of additional spaces for mobilehomes was discussed before the sale. Ray Gava testified he assumed the use permit was all he needed for the park and he told all prospective purchasers, including the Carrolls, that there was a zoning permit for the spaces that were there and the addition of spaces would require approval by the planning department and other agencies.

The Carrolls prepared an offer to purchase the park after their visits and discussions with the Gavas. The sale was made contingent upon "Seller's assurance of mobilehome zoning permit for 10 acres of subject property." The offer was accepted and the parties signed it and a deposit receipt. Escrow closed on June 15, 1971, and the Carrolls took possession.

In the spring of 1973, the Carrolls decided to sell the park. The information they compiled for prospective buyers included the statement that the 10-acre site was zoned for mobilehomes. The park was sold, and the buyer later sued the Carrolls when it was discovered the site was not zoned for mobilehomes. The Carrolls then cross-complained against the Gavas, and the matter came to trial after settlement of the buyer's claim.

The trial court found that the Gavas had told the Carrolls the 10-acre site was zoned for mobilehomes, the Gavas believed this was true but had no reasonable ground for such belief in light of their experience in real estate, the Gavas intended to induce reliance, the Carrolls relied on the representation and the error was material. The court also found the purchase price paid by the Carrolls exceeded the fair market value of the park by $26,000, and the Carrolls were entitled to judgment for that amount plus interest from June 15, 1971, to $6,425.52 in attorney's fees and costs stemming from the third-party suit, and to costs of the present suit.

■ On appeal, the Gavas claim (1) the court misapplied the law of negligent misrepresentation; (2) the findings are not supported by substantial evidence; (3) liability, if any, could only be assessed under a theory of mutual mistake (which does not allow interest from the date of the transaction or attorney's fees and costs); and (4) the doctrine of comparative negligence should be applied to defeat the damage award. The misapplication contention is based on statements in the court's memorandum of intended decision that no "overt" misrepresentation was made concerning the status of the property and that it was unreasonable for the Gavas not to have recognized the Carrolls believed the property contained 10 acres zoned for a mobilehome park. The Gavas point out that the tort of negligent misrepresentation requires the making of a false statement or assertion. This is true. (See 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, §§ 480-482, pp. 2739-2744; Civ. Code, §§ 1572, subd. 2, 1710, subd. 2.)[1] But the Gavas cannot claim successfully that the court did not find a false statement. The court issued formal findings of fact in which it specifically found the Gavas told the Carrolls that the 10-acre parcel was zoned for mobilehomes, and comments in the opinion may not be used to contradict findings. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 231, p.

---

[1]Civil Code section 1572: "Actual fraud, within the meaning of this Chapter [Contracts - Consent], consists in any of the following acts, committed by a party to the contract,...with intent to...induce him to enter into the contract:

". . . . . . . . . . . . . . .

"2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true; . . . ."

Civil Code section 1710: "A deceit, within the meaning of the last section [fraudulent deceit], is ...:

". . . . . . . . . . . . . . .

"2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true.

". . . . . . . . . . . . . . ."

4221.) The discrepancy is in any event more apparent than real. The trial judge's comments at the hearing on Gavas' objections to the proposed findings of fact and conclusions of law show he used the word "overt" as a synonym for "intentional" to indicate an absence of the scienter necessary for fraud. Since the court thus found that false assertions were made, Gavas' further arguments as to a seller's lack of duty to disclose are inapposite.

■ The Gavas next contend two of the court's findings are not supported by substantial evidence. Their contentions regarding the representation on zoning are in effect an invitation to us to reweigh the evidence and arrive at a conclusion favorable to them. This is not our function (*Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.* (1967) 66 Cal.2d 782, 786 [59 Cal.Rptr. 141, 427 P.2d 805]), and we must decline.

The court's finding of justifiable reliance on a material and false representation is also challenged by the Gavas on the grounds of insufficiency of the evidence. We have reviewed the record and find the evidence sufficient. Dwight Carroll testified he considered the zoning an important part of the transaction and would not have purchased the park if he had known the actual zoning status. He also testified he relied on Ray Gava because Gava was in the mobilehome business and knew what he was doing. Gava was experienced in real estate transactions and the park he sold to the Carrolls was the second he had bought and operated.

In a related argument, the Gavas contend the court should have predicated liability on a theory of mutual mistake, because of the term "zoning permit" in the sales contract.[2] Since we have found no fault with the judgment based on negligent misrepresentation, we need not consider other theories on which the case might have been decided, and we will not disturb the damage award on this basis.

■ The Gavas cite *American Motorcyle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 598 [146 Cal.Rptr. 182, 578 P.2d 899], and *Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725 [144 Cal.Rptr. 380, 575 P.2d 1162], as indications of a policy trend toward comparative fault analysis in disputes other than simple negligence cases. They

---

[2]They ignore the difference between authorization for a specific number of spaces for mobilehomes and authorization for development of an entire parcel. The distinction is critical to a buyer considering added value from the potential for park expansion and additional income.

ask reversal on that basis. Whatever that trend may be (cf. *Transit Casualty Co.* v. *Spink Corp.* (1979) 94 Cal.App.3d 124 [156 Cal.Rptr. 360]), the concept has no place in the context of ordinary business transactions. The modern law of misrepresentation evolved from the "action on the case of deceit" in business transactions. (See 1 Harper & James, Law of Torts (1956) § 7.1, p. 527; *Hale* v. *George A. Hormel & Co.* (1975) 48 Cal.App.3d 73, 82-86 [121 Cal.Rptr. 144].) Business ethics justify reliance upon the accuracy of information imparted in buying and selling, and the risk of falsity is on the one who makes a representation. (1 Harper & James, *supra*, at p. 551.) This straightforward approach provides an essential predictability to parties in the multitude of everyday exchanges; application of comparative fault principles, designed to mitigate the often catastrophic consequences of personal injury, would only create unnecessary confusion and complexity in such transactions.

The judgment is affirmed.

Puglia, P. J., and Regan, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 24, 1980.