[No. E010509. Fourth Dist., Div. Two. Jan. 10, 1994.]

HAND ELECTRONICS, INC., Plaintiff and Appellant, v. SNOWLINE JOINT UNIFIED SCHOOL DISTRICT et al., Defendants and Respondents.

**COUNSEL**

Peter G. Virag for Plaintiff and Appellant.

Furness, Middlebrook, Kaiser & Higgins, Greg C. Middlebrook and Moses W. Johnson IV for Defendants and Respondents.

**OPINION**

**DABNEY, J.**—Plaintiff Hand Electronics, Inc. (Hand) appeals from the trial court's order granting the motion of defendants Snowline Joint Unified School District and Robyn Lee Phillips (collectively referred to as Snowline) for a new trial. Snowline has filed a protective cross-appeal from the judgment. We affirm the order granting a new trial; therefore, Snowline's cross-appeal is moot.

### FACTUAL AND PROCEDURAL BACKGROUND

On December 13, 1988, Hand was moving certain manufacturing equipment to Hesperia. The truck carrying Hand's equipment was struck by a school bus owned by the school district and driven by Phillips, the school

district's employee. Phillips either failed to stop at a stop sign or proceeded prematurely into traffic and broadsided Hand's truck, which had the right-of-way.

In the collision, Hand's equipment was damaged. The equipment included two pantographs, used for manufacturing printed circuit boards. Because of the age of the pantographs and the unavailability of replacement parts, repair was not practical. Hand introduced evidence of the cost of replacing the pantographs with newer equipment which would serve the same purpose as the damaged equipment. Specifically, the evidence showed that the cost to replace the two pantographs was $18,600 each. However, on cross-examination, Hand's witness testified that the fair market value of the pantographs on the day of the accident was $500 to $1,000 each. Hand's president testified as to the damage which had occurred to other equipment on the truck. He testified that the replacement cost for a Blue M Oven was $2,500, and the replacement cost for a Chicago power tool drill press was $130 to $170.

Following trial, a jury returned a special verdict in favor of Hand, but fixed Hand's comparative fault at 10 percent. The net award of damages to Hand was $35,887.50.

After entry of judgment on the verdict, Snowline moved for new trial, or, in the alternative, for judgment notwithstanding the verdict or to vacate the verdict and enter a different judgment. Snowline moved for a new trial on the basis of all seven grounds listed in Code of Civil Procedure[1] section 657.[2]

Following a hearing on October 15, 1991, the court granted the motion for new trial. The court stated it was granting the motion because it had

[1]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2]Section 657 states in part, "The verdict may be vacated and any other decision may be modified or vacated, in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party:

"1. Irregularity in the proceedings of the court, jury or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial.

"2. Misconduct of the jury; . . .

"3. Accident or surprise, which ordinary prudence could not have guarded against.

"4. Newly discovered evidence, . . .

"5. Excessive or inadequate damages.

"6. Insufficiency of the evidence to justify the verdict or other decision, or the verdict or other decision is against law.

"7. Error in law, occurring at the trial and excepted to by the party making the application."

"botched the jury instructions." A minute order was prepared that day indicating that the motion was granted. However, the minute order did not specify grounds or reasons for the court's ruling.

Counsel for Snowline volunteered to prepare a notice of ruling, which was served on Hand on October 24, 1991. Counsel for Snowline also prepared an order for new trial which was signed by the court on November 1, 1991, and served on Hand on November 15, 1991. According to the orders, the new trial was granted on the grounds of: (1) insufficiency of the evidence; (2) excessive damages; and (3) erroneous jury instructions.

On July 7, 1993, on our own motion we issued an order appointing the superior court as referee to make a factual findings on the following issues:

"1. What constitutes the permanent minutes of the Superior Court of the County of San Bernardino?

"2. What was the date of entry of the order granting the defendants' motion for new trial in this matter?"

On October 28, 1993, the superior court filed a minute order in this court responding as follows:

"1. The permanent minutes of the Superior Court of San Bernardino County are the hand-prepared minutes by the Courtroom Clerk.

"2. The date of entry of the granting of Defendant's Motion for New Trial is 10-15-91."

Hand appeals from the order granting a new trial. Hand contends: (1) the trial court exceeded its jurisdiction by failing to comply with the requirements of sections 657 and 660; (2) the court's failure to timely specify reasons for its order establishes that the motion was not granted on the grounds of insufficiency of evidence or excessive damages; and (3) the jury instructions given were proper, and the court had no jurisdiction to grant a new trial on the ground of erroneous jury instructions.

Snowline has filed a protective cross-appeal, claiming that (1) replacement costs were not a proper measure of damages; (2) the trial court erred in permitting Hand's expert to testify, over Snowline's objection, to the replacement costs of the equipment; and (3) the trial court erred in permitting a highway patrol officer to testify as to the cause of the accident.

DISCUSSION

*Hand's Appeal*

*Motion for New Trial.*

Sections 657[3] and 660[4] establish mandatory procedures which must be strictly adhered to in granting a motion for new trial. Hand argues that the trial court failed to comply with sections 657 and 660, and the order granting a new trial was therefore fatally defective.

Specifically, Hand argues that: (1) the October 15, 1991, minute order did not designate the grounds on which the order was based; (2) the specification of reasons, filed on November 1, 1991, 15 days after the trial court entered the order granting Snowline's motion for new trial, was untimely and therefore void; and (3) section 657 forbids the court from shifting to the prevailing party the duty to prepare the statement of grounds or specification of reasons, but the court here permitted counsel for Snowline to prepare the order which the court signed on November 1, 1991.

*Untimely Specification of Reasons.*

■ Section 657 requires the statement of reasons to be filed within 10 days after the order determining the motion. The 10-day limitation is a statute of limitations, and is mandatory and jurisdictional. (*La Manna v.*

---

[3]Section 657 provides in part, "When a new trial is granted, on all or part of the issues, the court shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial upon each ground stated.

"A new trial shall not be granted upon the ground of insufficiency of the evidence to justify the verdict or other decision, nor upon the ground of excessive or inadequate damages, unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision.

"The order passing upon and determining the motion must be made and entered as provided in Section 660 and if the motion is granted must state the ground or grounds relied upon by the court, and may contain the specification of reasons. If an order granting such motion does not contain such specification of reasons, the court must, within 10 days after filing such order, prepare, sign and file such specification of reasons in writing with the clerk. The court shall not direct the attorney for a party to prepare either or both said order and said specification of reasons."

[4]Section 660 provides in part, "A motion for a new trial is not determined within the meaning of this section until an order ruling on the motion (1) is entered in the permanent minutes of the court or (2) is signed by the judge and filed with the clerk. The entry of a new trial order in the permanent minutes of the court shall constitute a determination of the motion even though such minute order as entered expressly directs that the written order be prepared, signed and filed."

*Stewart* (1975) 13 Cal.3d 413, 418 [118 Cal.Rptr. 761, 530 P.2d 1073].) A specification of reasons filed after the 10-day limit is in excess of jurisdiction and therefore void. (*Smith* v. *Moffat* (1977) 73 Cal.App.3d 86, 91 [140 Cal.Rptr. 566].)

Section 660 provides that a motion is determined when the court's order is either entered in the court's permanent minutes or is signed by the judge and filed with the clerk. Snowline argues that the October 15, 1991, minute order was never actually entered in the court's permanent minutes, and is therefore not controlling. However, the superior court's factual findings are contrary to this position. Acting as referee, the superior court found that the courtroom clerk's handwritten minutes are the permanent minutes of the court. The October 15, 1991, order was the order which determined the motion under section 660.

Thus, the court's November 1, 1991, specification of reasons for granting the motion for new trial was untimely and void. The October 15, 1991, minute order granting the motion for new trial did not state any grounds or reasons for the decision to grant a new trial. Under such circumstances, we are precluded under section 657 from affirming the order on the grounds of insufficiency of the evidence or excessive damages. (§ 657; *Neal* v. *Montgomery Elevator Co.* (1992) 7 Cal.App.4th 1194, 1198 [9 Cal.Rptr.2d 497].)[5]

*Jury Instruction on Replacement Costs.*

An order granting a new trial which does not specify grounds is defective, but not void under section 657. (*Sanchez-Corea* v. *Bank of America* (1985) 38 Cal.3d 892, 901 [215 Cal.Rptr. 679, 701 P.2d 826].) "On appeal from an order granting a new trial the order shall be affirmed if it should have been granted upon any ground stated in the motion, whether or not specified in the order or specification of reasons, except that (a) the order shall not be affirmed upon the ground of the insufficiency of the evidence to justify the verdict or other decision, or upon the ground of excessive or inadequate damages, unless such ground is stated in the order granting the motion and (b) on appeal from an order granting a new trial upon the ground of the insufficiency of the evidence to justify the verdict or other decision, or upon the ground of excessive or inadequate damages, it shall be conclusively presumed that said order as to such ground was made only for the reasons specified in said order or said specification of reasons, and such order shall

---

[5]Because the trial court's November 1, 1991, order was untimely, we need not address whether it was also void because the court improperly delegated to Snowline's counsel the task of preparing the order. (See, e.g., *La Manna* v. *Stewart, supra,* 13 Cal.3d at p. 422, fn. 7.)

be reversed as to such ground only if there is no substantial basis in the record for any of such reasons." (§ 657.)

Thus, we examine whether any ground, other than insufficiency of the evidence or excessive damages, supports the trial court's order granting the motion for new trial. (*Sanchez-Corea* v. *Bank of America, supra,* 38 Cal.3d at p. 900.) Snowline argues that the order granting a new trial should be affirmed on the ground of error in law because the trial court erred in instructing the jury on replacement costs, when the proper measure of damages was the fair market value of the equipment.

Before trial, Snowline submitted its proposed jury instructions, including BAJI No. 14.02,[6] BAJI No. 14.20,[7] and BAJI No. 14.22.[8] Those instructions were refused. Instead, the court instructed the jury using a modified version of BAJI No. 14.02 (1991 rev.) (7th ed. pocket pt.): "The total amount of plaintiff's economic damages is the amount that will reasonably compensate it for each of the following elements of claimed loss or harm, provided that you find that such loss or harm was suffered by it and was proximately caused by the act or omission upon which you base your finding of negligence of the defendant[s], if you so find.

"The term economic damages means [objectively verifiable] monetary losses including costs of repair or *replacement*, or that sum which is equal to the difference in the fair market value of the property immediately before and immediately after the accident.

"If the damages have been repaired, or are capable of repair, so as to restore the fair market value as it existed immediately before the accident, at

---

[6]BAJI No. 14.02 (7th ed. 1986 bound vol.), as submitted by Snowline, stated, "The total amount of plaintiff's damages is the amount that will reasonably compensate him for each of the following elements of claimed loss or harm, provided that you find that such loss or harm was or will be suffered by him and was proximately caused by the act or omission upon which you base your finding of negligence of the defendants, if you so find. [¶] The amount of such award shall include: . . ."

[7]BAJI No. 14.20 (7th ed. 1986 bound vol.), as submitted by Snowline, stated, "Reasonable compensation to plaintiff for damage to his property.

"That sum is equal to the difference in the fair market value of the property immediately before and immediately after the accident.

"If the damages have been repaired, or are capable of repair, so as to restore the fair market value as it existed immediately before the accident, at a cost less than such difference in value, then the measure of damage is the cost of such repair rather than such difference in value."

[8]BAJI No. 14.22 (7th ed. 1986 bound vol.), as submitted by Snowline, stated, "Reasonable compensation to plaintiff for being deprived of the use of his property during the time reasonably necessary for repairing the damage proximately resulting from the accident. In determining that amount you may consider the reasonable rental value of the property for the period of time just mentioned."

a cost less than such difference in value, then the measure of damage is the cost of such repair rather than such difference in value." (Italics added.)

Replacement costs do not constitute the proper measure of damages in this case. (*Smith* v. *Hill* (1965) 237 Cal.App.2d 374, 388 [47 Cal.Rptr. 49]; *Lane* v. *Spurgeon* (1950) 100 Cal.App.2d 460, 463 [223 P.2d 889]; *Smith* v. *Calley* (1930) 103 Cal.App. 735, 737 [284 P. 974].) "As a general rule the measure of damage for the loss or destruction of personal property is the value of the property at the time of such loss or destruction." (*Lane, supra,* 100 Cal.App.2d at p. 463.)

■ Other authorities are in accord on the measure of damages for personal property: "Where personal property is injured but not wholly destroyed, one rule is that the plaintiff may recover the *depreciation in value* (the measure being the difference between the value immediately before and after the injury), and compensation for the loss of *use*. [Citations.]" (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1449, pp. 925-926, original italics.) In the alternative, the plaintiff may recover the reasonable cost of repairs as well as compensation for the loss of use while the repairs are being accomplished. (*Id.,* at § 1450, p. 926.) If the cost of repairs exceeds the depreciation in value, the plaintiff may only recover the lesser sum. Similarly, if depreciation is greater than the cost of repairs, the plaintiff may only recover the reasonable cost of repairs. (*Olds & Stoller, Inc.,* v. *Seifert* (1927) 81 Cal.App. 423, 427 [254 P. 289].) If the property is wholly destroyed, the usual measure of damages is the market value of the property. (*Pelletier* v. *Eisenberg* (1986) 177 Cal.App.3d 558, 567 [223 Cal.Rptr. 84].)

■ Hand argues that the authorities which establish market value or cost of repairs as the measure of damages do not apply because those authorities were decided before BAJI No. 14.02 was revised in light of Civil Code section 1431.2, based on Proposition 51, adopted in 1986. However, Civil Code section 1431.2 affects only the allocation of damages, not the measure of damages. Proposition 51 was not intended to establish a new rule of law with respect to the measure of damages to personal property. We conclude that Civil Code section 1431.2 did not supersede earlier authorities with respect to the measure of damages.

■ Hand next argues that instructional error was not a proper basis for granting the motion for new trial because Snowline did not rely on such error in its memorandum of points and authorities in support of the motion. However, Snowline did list error in law as one of the bases for its motion in its notice of motion. As the court explained in *Neal* v. *Montgomery Elevator*

*Co.*, *supra*, 7 Cal.App.4th at page 1198, listing error in the notice of intention to move for new trial is sufficient to place the issue before the trial court.

Hand also argues that the challenged instruction was given by unanimous consent of the parties, and Snowline thus should be precluded from relying on instructional error as the basis for upholding the trial court's ruling. ■ We disagree; " '. . . the rules applicable to . . . invited error or to estoppel[ ] have no application when an appellate court is considering the propriety of an order granting a new trial. If the trial court had denied the new trial such error would be considered waived by failure to object. But the trial court has broad discretion in considering motions for a new trial.' [Citations.]" *(Neal* v. *Montgomery Elevator Co.*, *supra*, 7 Cal.App.4th at p. 1198.)

■ BAJI No. 14.02,[9] as given to the jury, contained three options for the jury to determine the damages: (1) costs of repair, (2) costs of replacement, or (3) depreciation in market value. The jury should not have been instructed on cost of replacement because it is not a proper measure of damages for injury to personal property. The trial court properly concluded that the error was prejudicial: the only way the jury could have reached the verdict on damages was by awarding the replacement cost of the equipment.

■ On appeal from an order granting a new trial, the sole question is whether the trial court abused its discretion. *(Seimon* v. *Southern Pac. Transportation Co.* (1977) 67 Cal.App.3d 600, 604 [136 Cal.Rptr. 787].) This court makes all presumptions in favor of the order as against the verdict, and this court will reverse only if manifest abuse of discretion is shown. *(Miller* v. *National American Life Ins. Co.* (1976) 54 Cal.App.3d 331, 345 [126 Cal.Rptr. 731].) When a new trial was granted on the basis of an erroneous instruction, the order "will not be disturbed unless the questioned instruction was absolutely accurate and under no reasonable interpretation could possibly have misled or confused the jury. [Citations.]" *(Christian* v. *Bolls* (1970) 7 Cal.App.3d 408, 415 [86 Cal.Rptr. 545].)

■ Here, we find that the challenged instruction was ambiguous and likely misled the jury into awarding improper damages based on the replacement cost of the equipment. We find no abuse of discretion in the trial court's order granting a new trial on the basis of error in law.

[9]We believe that the 1991 revision to BAJI No. 14.02 created an ambiguity, in that it defines economic damages to include "costs of repair or replacement," even though cost of replacement is not a proper measure of tort damages for injury to personal property.

Because we affirm the order granting a new trial, the cross-appeal becomes moot.

## DISPOSITION

The order granting a new trial is affirmed. Each party shall bear its own costs on appeal.

Ramirez, P. J., and McDaniel J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, senior judge status (Gov. Code, § 75028.1), sitting under assignment by the Chairperson of the Judicial Council.